**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**ESTHER HILL WHITE**  *  **CIVIL ACTION NO.  15-2181**

**VERSUS**  *  **JUDGE ROBERT G. JAMES**

**CIGNA GROUP INSURANCE ET AL.**  *  **MAG. JUDGE KAREN L. HAYES**

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a petition for benefits under two life insurance policies governed by the Employment Retirement Income Security Act ("ERISA"),  29 U.S.C. § 1001, *et seq*.[1] For reasons explained below, it is recommended that the petition be **DENIED**.

## Factual and Procedural Background

On August 13, 2015, Plaintiff Esther Hill White, on behalf of her deceased husband, David White, filed the instant petition for benefits under her late husband's life insurance policies. Mr. White was employed by Halliburton Energy Services, Inc., and was at all relevant times covered by two group accident insurance policies (the "Policies") that were insured by defendant Life Insurance Company of North America ("LINA").

The Policies contain two exclusions relevant to this case, and that provide as follows: "benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any of the following unless coverage is specifically provided for by name in the *Description of Benefits* Section:"

---

[1]  The parties submitted the matter for decision on the administrative record.  *See*, December, 16, 2016, Civil Case Management Order. [doc. #40].

1

> 5. the Covered Person's intoxication as determined according to the laws of the jurisdiction in which the Covered Accident occurred;
>
> 6. voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage.

AR-LINA 0019.

On July 26, 2014, Mr. and Mrs. White were in a horrible car accident. Mr. White, while driving with Mrs. White as his passenger, crossed three lanes of traffic while traveling northbound on U.S. highway 167 and collided head-on with an eighteen-wheeler truck that was traveling the opposite direction. Mrs. White survived, but suffered severe and debilitating injuries. Mr. White sustained multiple injuries, and on July 31, 2014, experienced a massive stroke. Mr. White was pronounced dead on August 1, 2014.

On October 6, 2014, Mrs. White filed a claim for benefits under the Policies. AR-LINA 0436. On April 10, 2015, LINA denied Mrs. White's claim for benefits, finding that payment under the Policies was excluded. Specifically, LINA concluded that Mr. White's death was directly or indirectly, in whole or in part, caused by or resulted from Mr. White's intoxication and from the voluntary ingestion of non-prescription narcotics and/or drugs. AR-LINA 0116. On July 23, 2015, the determination to deny benefits was upheld on appeal. AR-LINA 0102.

On August 13, 2015, Plaintiff filed the instant petition against LINA, arguing that LINA wrongfully denied her claim and seeking an award of benefits in the amount of $1,102,000, attorney's fees, judicial interest, court costs, and all other relief as the Court may deem proper.[2] [doc. #20, ¶ 7]. Plaintiff filed her brief on January 24, 2017, [doc. #41]. Defendant filed its brief on February 21, 2017, [doc. #42], and Plaintiff filed her reply on March 6, 2017, [doc. #43].

---

[2] Plaintiff originally sued CIGNA Group Insurance and CIGNA Intellectual Property Inc. Both Defendants have since been terminated from the case.

2

This matter is now ripe for decision.

## Discussion

## I.      Standard of Review Under ERISA

"ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans' and 'to protect contractually defined benefits.'" *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 393 (5th Cir. 1998) (citation omitted).  To achieve these goals, ERISA requires every employee welfare benefit plan to,

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

When deciding whether to pay or deny benefits, a plan administrator must make two general types of determinations: "[f]irst, [s]he must determine the facts underlying the claim for benefits. . . . Second, [s]he must then determine whether those facts constitute a claim to be honored under the *terms* of the plan."  *Schadler*, 147 F.3d at 394 (citation omitted) (emphasis in original).  If a plan participant has been denied benefits, ERISA permits a claimant to bring suit in federal court "to recover benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).

Under ERISA, the factual determinations made by the plan administrator or fiduciary are reviewed for abuse of discretion. *S. Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 100-01 (5th Cir. 1993) (citing *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552 (5th Cir.1991)).

3

Moreover, when an ERISA plan gives the administrator discretionary authority to construe the plan's terms and determine eligibility for benefits, the Court reviews the administrator's decision for abuse of discretion. *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010). The parties stipulated that the Policies vest LINA with discretionary authority to construe the Policies' terms and determine eligibility for benefits. [doc. #14].

The Court will only find an abuse of discretion "where the plan administrator acted arbitrarily or capriciously." *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 246 (5th Cir. 2009). "When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, we affirm an administrator's decision if it is supported by substantial evidence." *Id.* Substantial evidence

> is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. An arbitrary decision is one made without a rational connection between the known facts and the decision or between the found facts and the evidence.

*Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007) (internal quotation marks and citations omitted). "A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Id.* The Court must only ensure that the decision falls "somewhere on a continuum of reasonableness—even if on the low end." *Id.* at 247. However, the Court "owes no deference . . . to an administrator's unsupported suspicions." *Anderson*, 619 F.3d at 512.

Courts undertake a two-step process to review a plan fiduciary's interpretation of its plan:

> First, a court must determine the legally correct interpretation of the plan. If the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion. In answering the first question, i.e., whether the administrator's interpretation of the

4

plan was legally correct, a court must consider:

(1) whether the administrator has given the plan a uniform construction;

(2) whether the interpretation is consistent with a fair reading of the plan, and

(3) any unanticipated costs resulting from different interpretations of the plan.

*Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637-38 (5th Cir.), *as modified*, 979 F.2d. 1013 (5th Cir. 1992).  "If we determine that the fiduciary's interpretation of the plan was legally correct, the inquiry is over, pretermitting any need to consider whether a legally incorrect interpretation of the fiduciary was not an abuse of discretion." *Ellis*, 394 F.3d at 270. However, if the Court determines that the administrator's decision was legally incorrect, the court must reach the ultimate question of whether the decision was arbitrary and capricious. *Wildbur*, 974 F.2d at 638.

## II.    Plaintiff's Claim

LINA found that benefits were not payable under the terms of the Policies because Mr. White's death was in whole or in part caused by or resulted from (1) his intoxication; and (2) the voluntary ingestion of non-prescription narcotics and/or drugs. AR-LINA 0116. The Policies state that whether an individual is intoxicated is determined according to the laws of the jurisdiction in which the Covered Accident occurred. The accident in this case occurred in Arkansas. In Arkansas, intoxicated

> means influenced or affected by the ingestion of alcohol, a controlled substance, any intoxicant, or any combination of alcohol, a controlled substance, or an intoxicant, to such a degree that the driver's reactions, motor skills, and judgment are substantially altered and the driver, therefore, constitutes a clear and substantial danger of physical injury or death to himself and other motorists or pedestrians.

ARK. CODE ANN. § 5-65-102(2) (2014).

In its initial decision, LINA explained that the Louisiana death certificate indicated that

Mr. White died as a result of a "massive stroke" due to "multiple trauma" due to "cocaine abuse, amphetamine abuse." AR-LINA-0117. Marijuana use was listed as a significant condition contributing to death. *Id.* The certificate stated that Mr. White sustained his injuries when he crossed over multiple lanes of traffic and struck an oncoming semi tractor trailer head on. *Id.* Medical records from the day of the accident included a urine drug screen, which tested positive for amphetamine, benzodiazepine, cocaine, cannabinoids, and opiates. *Id.* The Arkansas crash report indicated that the weather was clear, roadways were dry and there were no road way defects, construction zones or vehicle malfunctions noted on the day of the accident. *Id.* The crash report stated the cause of the collision was due to Mr. White crossing left of the center line and carelessly driving across three lanes of traffic and striking an 18-wheeler head on. *Id.* In its letter, LINA noted that Mrs. White told the responding officer that her husband suffered from narcolepsy and had fallen asleep while operating a car in the past. *Id.* She also stated that her husband had a problem with taking too much of his prescribed medications. *Id.* Mr. White was cited for Driving While Intoxicated, Careless or Prohibited Driving, and Driving Left of the Center Line. *Id.* Based on said evidence, LINA determined that Mr. White's death was, directly or indirectly, in whole or in part, caused by or resulted from his intoxication and the voluntary ingestion of non-prescription narcotics or drugs. *Id.*

Plaintiff appealed LINA's decision on June 5, 2015. AR-LINA 0113. Plaintiff complained that there was "no credible evidence" to substantiate the position that Mr. White was intoxicated. *Id.* She asserted that no testing was done to quantify the drugs in his system or to determine whether there were false positives. *Id.* Plaintiff pointed out that "[t]here was no autopsy done to verify or substantiate that he died as a result of anything other than injuries

6

sustained in the accident." *Id.*[3]

On July 23, 2015, LINA upheld its decision on appeal. LINA asserted that, under Arkansas law, there are two distinct ways to be convicted of driving while intoxicated: (1) by driving while "intoxicated" as defined by Arkansas law; or (2) by virtue of having a blood alcohol content of .08 or above. AR-LINA 0104; *see* ARK. STAT. ANN. 5-65-103 (2014). Therefore, a quantitative blood test was not required because Mr. White was found to be "intoxicated." *Id.* LINA relied on the same evidence to uphold its decision on appeal, and also stated that there was no documented evidence of any avoidance maneuvering or braking by Mr. White. AR-LINA 0105. LINA stated that because cannabinoids and cocaine were not prescribed and contributed to his death, payment of benefits was excluded. *Id.*

Through the instant petition, Plaintiff argues that LINA abused its discretion in denying Mrs. White's claim for benefits. Specifically, Plaintiff argues that LINA has no concrete proof that Mr. White was intoxicated or that the accident was caused by his intoxication. [doc. #43, pp. 1-2]. She also argues that LINA had a structural conflict of interest that was emphasized by its failure to disclose the report provided by its own expert toxicologist. [doc. #41, p. 22].

A. LINA Correctly Interpreted the Plan

Plaintiff argues that the plain terms of the Policies require the covered injury or loss to be *caused by or result from* the decedent's intoxication and/or voluntary ingestion of non-

---

[3] Mrs. White also argued that LINA mistakenly applied the underage DWI statute in Arkansas, as opposed to the adult statute. In its original decision, LINA cited to the correct statute— ARK. STAT. ANN. 5-65-201—for the definition of *intoxication.* However, LINA also cited to ARK. STAT. ANN. 5-65-302(1), which is the juvenile DWI statute, for the definition of *influence.* Intoxication, not influence, is the important policy term at issue here. In any event, LINA cited to the correct statute, and did not mention the juvenile statute, in its decision on appeal.

prescription narcotics or drugs. Plaintiff asserts that "there is no confirmed evidence" that Mr. White "ingested drugs on the day of the accident, that he was impaired, or that impairment caused the accident." [doc. #41, p. 1]. In other words, Plaintiff argues that the Policies require "direct evidence" of intoxication and causation.

The Policies specifically state that the law of the jurisdiction where the accident occurred is used to determine whether the driver was "intoxicated." AR-LINA 0019. Direct evidence is not required to prove intoxication under Arkansas law. To the contrary, it is well-settled under Arkansas law that circumstantial evidence may constitute substantial evidence to support a jury's verdict of guilty in a Driving While Intoxicated case. *Wetherington v. State*, 889 S.W.2d 34 (Ark. 1994); *see Lockhart v. State*, 2017 Ark. 13, 2017 WL 374725, at *-3-*4 (discussing circumstantial evidence bearing on the issue of intoxication).

 As to the issue of causation, LINA contends that circumstantial evidence can support a finding of causation, and that the circumstantial evidence in this case establishes that Mr. White's intoxication and voluntary ingestion of non-prescription narcotics and/or drugs,  in whole or in part, caused the crash. In response, Plaintiff asserts that circumstantial evidence is insufficient to find causation.

The Policies do not define "caused by" or "resulted from." As described above, in order to ascertain the legally correct interpretation of the plan, the court must consider: "(1) whether a uniform construction of the plan has been given by the administrator; (2) whether the interpretation is fair and reasonable; and (3) whether unanticipated costs will result from a different interpretation of the policy." *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 228 (5th Cir. 2004). Applying these factors, LINA fairly and reasonably interpreted the Policies to

8

only require circumstantial evidence, as opposed to direct proof, of causation. Plaintiff did not allege that the construction of the Policies was not uniform or that there were unanticipated costs.

In *Dutka* ex rel. *Estate of T.M. v. AIG Life Insurance Co.*, the Fifth Circuit dealt with a similar Plan's exclusion for losses "caused in whole or in part by, or resulting in whole or in part from . . . the Insured Person being under the influence of drugs or intoxicants." *Dutka* ex rel. *Estate of T.M. v. AIG Life Ins. Co.*, 573 F.3d 210, 212 (5th Cir. 2009). Like Plaintiff in this case, the *Dutka* Plaintiffs argued that there was no proof that the drugs found in the decedent's system caused the fatal plane crash. *Id.* at 214. The Fifth Circuit found that, while there was no direct proof that the drugs caused the crash, "in such a case there rarely is—the evidence is circumstantial." *Id.* The Court held that the "nature of the accident itself support[ed] the conclusion that drugs contributed." *Id.* "In good visual meteorological conditions and with no evidence of mechanical failure . . . the failure to maintain airspeed at low altitude is a fundamental piloting error making it reasonable to conclude that the accident resulted in part from the pilot being under the influence of drugs." *Id.* Therefore, it was not an abuse of discretion for the plan administrator to find that the crash was caused in part by the influence of drugs. *Id.*

Here, Plaintiff cites no relevant authority for the proposition that the Policies' terms require "direct proof" of causation. As stated in *Dutka*, there is rarely direct evidence of causation in cases such as this one. Moreover, other district courts have interpreted plans with similar causation provisions to only require circumstantial evidence. *See, e.g., Nichols v. Hartford Life & Accident Ins.*, No. 4:13-cv-03048, 2014 WL 12537147, *4 (S.D. Tex. June 9,

2014) (relying on circumstantial evidence to conclude that the accident resulted in part from Plaintiff's intoxication); *Cerone v. Reliance Standard Life Ins. Co.*, No. 13-cv-184, 2014 WL 10706760, *9 (S.D. Cal. Aug. 8, 2014) (relying on circumstantial evidence that Plaintiff's intoxication contributed to his death). Therefore, LINA gave a fair and reasonable interpretation of the Policies' terms when it found that circumstantial evidence could support a finding of intoxication and causation.

> B. Even if LINA Incorrectly Interpreted the Plan, it Did Not Abuse its Discretion in Denying White's Claim

Assuming *arguendo* that LINA's decision was legally incorrect, and this Court were required to proceed to the second step of the *Wildbur* analysis, White would not be able to obtain a reversal of LINA's coverage decision because the decision was not arbitrary and capricious.

To reiterate, courts will affirm a plan administrator's decision if it is supported by substantial evidence. *See Holland*, 576 F.3d at 246. Substantial evidence

> is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. An arbitrary decision is one made without a rational connection between the known facts and the decision or between the found facts and the evidence.

*Corry*, 499 F.3d at 398.

Plaintiff argues that there was no substantial evidence to support LINA's finding that Mr. White was intoxicated or that intoxication caused the accident. Plaintiff complains that the toxicology results were only qualitative, not quantitative, and could not be used to determine causation. Additionally, LINA's expert, Dr. Frederick Fochtman, an independent forensic toxicologist, issued a report stating that Mr. White's drug screen results showed that he "had prior exposure" to narcotics and/or drugs, but that "an estimation of Mr. White's level of

impairment [could not] be done." AR-LINA 0147. Plaintiff also argues that she informed LINA that "the accident occurred because her husband was distracted by her activities playing with the family dog in the backseat of the vehicle." [doc. #41, pp. 3-4].

The Court finds that a reasonable mind could certainly accept as adequate the evidence in this case to support a finding that Mr. White was intoxicated and that his intoxication and voluntary ingestion of non-prescription drugs directly or indirectly, in whole or in part, caused the accident. The Arkansas collision report states that, at the time of the accident, the weather conditions were clear, it was daylight, the surface conditions were dry, there were no roadway defects, no construction was going on in that area, and all traffic control devices were functioning properly. AR-LINA 0169. There was no evidence of avoidance maneuvering or braking by Mr. White. The nature of the accident is also telling, as Mr. White failed to negotiate a right hand turn, crossed three lanes of traffic, and collided head on with an 18-wheeler. Mr. White was cited for Driving While Intoxicated,[4] Careless or Prohibited Driving, and Driving over the Center Line. AR-LINA 0169. Mr. White's death certificate indicates that cause of death was "massive stroke" due to "multiple trauma" with underlying causes of "cocaine abuse" and "amphetamine abuse." AR-LINA 0156. "Underlying cause" is defined on the death certificate as

---

[4] It appears that the responding officer on the scene initially indicated that it was "UNKNOWN" whether Mr. White was impaired at the time of the accident. AR-LINA 0442. The initial Arkansas collision report does indicate that a blood test was requested and pending. *Id.* Initially, Mr. White was cited for Driving While Intoxicated because emergency medical personnel told the reporting officer that they smelled alcohol emitting from the decedent's breath. AR-LINA 0445. However, the blood test showed no alcohol in Mr. White's system. But because Mr. White's urine test registered positive for cocaine, cannabinoids, opiates, amphetamines, and a benzodiazepine, a supplemental note was added to the Arkansas collision report on January 29, 2015 indicating same. AR-LINA 0173. Mr. White's "driver-impairment" status on the collision report was then changed from "UNKNOWN" to "IMPAIRED". *Id.* Both reports were in the administrative record for review by the administrator.

"disease or injury that initiated the events resulting in death." *Id.* The certificate also lists "marijuana abuse" as a significant condition contributing to death. *Id.*

Plaintiff points out that Dr. Fochtman's report states that emergency medical personnel "likely administered an opioid drug and a benzodiazepine either prior to transport, during transport and/or once arriving at ths hospital prior to collection of his urine specimen" which "would account for the positive drug screen for opiates and benzodiazepines." AR-LINA 0147. However, Mr. White's urine unexplainably tested positive for cannabinoids, cocaine, and amphetamines. AR-LINA 0147. Dr. Fochtman concluded that the drugs in Mr. White's system "could explain his level of impairment that resulted in his crash." *Id.* LINA also states that Plaintiff's explanation about the family dog distracting Mr. White came nearly three months after the accident and only after she saw the death certificate indicating that Mr. White had drugs in his system. [doc. #42, p. 9]. Indeed, Plaintiff initially told responding officers that her husband suffered from narcolepsy and had fallen asleep while operating a car in the past, and also that he had a problem with taking too much of his prescribed medications. AR-LINA 0173.

Toxicology reports generally provide strong evidence to support a plan administrator's determination that a driver was intoxicated at the time of the collision. *See Dutka*, 573 F.3d at 213-14. Plaintiff's argument that a urine test is insufficient because it provides only "qualitative" results is unpersuasive, and the Court has not located any authority to support this contention. *See id* at 213-14 (finding that plan administrator did not abuse its discretion where it used urine drug screen to generate a toxicology report); *Lubich v. Liberty Life. Assur. Co. of Boston*, No. 09-364, 2010 WL 1253547, *7 (W.D. Pa. Mar. 4, 2010) (granting summary judgment to defendant where it relied, in part, on urine drug screen that tested positive for Dilaudid and

opiates). Furthermore, Plaintiff provides no evidence that contradicts the urine test's results. *See Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1200 (11th Cir. 2010) (fiduciary entitled to rely upon toxicology tests to conclude claimant was under the influence where he presented no evidence beyond unsubstantiated assertion of improper calibration); *Tran v. United of Omaha Life Ins. Co.*, 780 F.Supp. 2d 965, 974 (D. Neb. 2011) (rejecting speculative arguments that toxicology report was unreliable).

Moreover, other district courts have held that a toxicology report, coupled with other evidence, can constitute substantial evidence that the decedent's intoxication caused his or her death. In *Sorrells v. Sun Life Assur. Co. of Canada*, the decedent was involved in a single-car accident and died at the hospital as a result of his injuries. *Sorrells v. Sun Life Assur. Co. of Canada*, 85 F.Supp.2d 1221, 1224 (S.D. Ala. 2000). The toxicology report stated that the decedent's blood alcohol content was .23. *Id.* The accident report indicated that the decedent "ran off the two-lane, county road onto the right shoulder, returned to the roadway, overturned . . . , and continued across the oncoming lane . . ., before coming to a rest on the left shoulder of the roadway with Mr. Sorrells partially ejected from the vehicle." *Id.* at 1224-25. In completing the accident report, the investigating officer noted that

> the road surface was asphalt, there were no contributing road defects, the conditions were dry, there was nothing to obscure Mr. Sorrels' vision, there were no materials in the roadway contributing to the accident, the accident did not occur in or relate to a road construction zone, the accident occurred in a level curve in the two-lane roadway which was marked as a no passing zone.

*Id.* at 1225. The Southern District of Alabama upheld the administrator's decision to deny the claim, finding that "there [was] no evidence in the record to suggest that there was any other cause of the accident" other than Mr. Sorrells' intoxication. *Id.* at 1233. A responding officer had

13

provided an affidavit stating that he did not smell any alcohol on Mr. Sorrells' breath and that he did not observe anything that indicated that Mr. Sorrells was intoxicated. *Id.* Yet, the district court found that such "subjective observations [could] not overcome the objective results of the toxicology report." *Id.* at 1234.

So to here, Mrs. White's self-serving statement about the family dog's distracting her husband, provided three months after the crash, cannot overcome the objective results of Mr. White's urine test. Nor can her statement overcome the death certificate which indicates that cocaine and amphetamine abuse were underlying causes of death. With cocaine, marijuana, and amphetamine unexplainably in his system, Mr. White traveled across three lanes of traffic and collided head on with an 18-wheeler during the day, during good weather conditions, with dry roads, and without any noted road defects. Without Mrs. White's self-serving statement, there is no evidence to suggest that there was any other cause of the accident.

Plaintiff also argues that LINA impermissibly denied benefits solely based on the positive drug results from Mr. White's urine test. The Fifth Circuit ascribes to a rule that death resulting from driving while intoxicated is not *per se* excludable under insurance policies. *See Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 544 (5th Cir. 2012) (mem.). Insurance companies must adduce *some* other evidence in addition to toxicology results. *Id.* In *Firman*, LINA abused its discretion when it cited *only* the decedent's urine alcohol content as a reason for denying benefits. *Id.* at 545. This case, however, is distinguishable from *Firman*. In addition to the toxicology report, LINA relied on the particularly egregious nature of the accident, the Louisiana death certificate indicating cocaine and amphetamine abuse as underlying causes of death, the clear road and weather conditions, and the lack of any other explanation for the

14

accident.

Plaintiff further argues that LINA "demonstrated its structural conflict of interest" by simply ignoring, and failing to disclose to Plaintiff, the opinion of its own expert forensic toxicologist. [doc. #41, p. 2]. LINA's expert toxicologist issued a report stating that

> Mr. White's medical records show that he was receiving medication therapy for multiple conditions that included chronic shoulder and back pain, esophageal reflux, thyroid disorder, anxiety and depression. . . . It is noted that Mr. White's prescribed medications do not include amphetamine, cocaine or medical marijuana. Mr. White's urine drug screen results indicated that he had prior exposure to an opioid drug, a benzodiazepine, an amphetamine, cocaine and marijuana. Emergency medical personnel likely administered an opioid drug and a benzodiazepine either prior to transport, during transport, and/or once arriving at the hospital prior to collection of his urine specimen. This would account for the positive drug screen for opiates and benzodiazepines. There is no indication in the hospital records that Mr. White was administered an amphetamine or cocaine. Further there is no indication that he was provided "medical" marijuana . . . . Since the only blood test done was an alcohol that was negative and no blood tested for the presence of drugs, an estimation of Mr. White's level of impairment cannot be done. The drugs present in his urine only show that he had prior exposure and cannot be used to estimate a level of impairment. Further, the drug screen that was done on Mr. White's urine specimen only provided qualitative positive results. However, in the absence of any other cause of the collision, the drugs in his system could explain his level of impairment that resulted in his crash.

AR-LINA 0147. LINA did not rely on Dr. Fochtman's findings, or mention Dr. Fochtman's report, in its initial letter denying benefits or in its letter upholding benefits on appeal.

"Where, as here, the employer who funds the plan also determines eligibility for benefits, a structural conflict of interest exists." *Holland*, 576 F.3d at 248. When a Court reviews the lawfulness of benefit denials, it will take account of several factors of which a conflict of interest is one. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008). In other words, "conflicts are but one factor among many that a reviewing judge must take into account. *Id.* at 116. Where a plan fiduciary has a conflict of interest, the Fifth Circuit applies a sliding scale standard of

review: "The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." *Ellis*, 394 F.3d at 270.

Both initially and on appeal, LINA stated that Mr. White was under the influence of marijuana, cocaine, amphetamines, opiates, and benzodiazepines. While it is troubling that LINA continued to claim that Mr. White was under the influence of benzodiazepines and opiates despite its own expert's opinion that such drugs were administered by emergency medical personnel, the Court cannot say that LINA abused its discretion in finding that Mr. White was intoxicated. Overall, Dr. Fochtman's report was favorable to LINA's case and disfavorable to Plaintiff's case. *Compare Schully v. Continental Cas. Co.*, 380 Fed. App'x 437, 439 (5th Cir. 2010) (finding an abuse of discretion where Hartford deliberately ignored overwhelming objective evidence in favor of unsupported, inconclusive facts); *and*, *Schexnayder*, 600 F.3d at 471 n. 3 (failure to acknowledge contrary social security administration award suggested procedural unreasonableness). While Dr. Fochtman stated that Mr. White's *level* of impairment could not be conclusively determined, he also concluded that "the drugs in [Mr. White's] system could explain his level of impairment that resulted in his crash." AR-LINA 0147. His report also stated that Mr. White was not prescribed medications that included amphetamine, cocaine or medical marijuana. *Id.* Plaintiff has never explained why Mr. White had cocaine and marijuana in his system.[5] In sum, this is not a case where LINA ignored objective or reliable evidence, and instead "relied on selective, inconclusive and arbitrary facts" in determining that benefits were not payable. *See Schully,* 380 Fed. App'x at 439.

---

[5] Three months after the accident, Plaintiff apparently called LINA and informed it that the amphetamines in Mr. White's system were from allergy medications he was taking. [doc. #42, p. 5].

16

Accordingly, in light of the evidence supporting LINA's decision, conflict of interest is not a big factor in this case. See *Holland*, 576 F.3d at 251. The court is mindful of the deferential standard afforded to LINA's decision, especially in light of the Policies' broad language excluding injuries or losses "which, **directly or indirectly, in whole or in part**," are caused by or result from "the Covered Person's intoxication" and the "voluntary ingestion" of any non-prescription narcotic or drug. LINA did not abuse its discretion in finding that benefits were not payable under the terms of the Policies. Accordingly, it is recommended that Plaintiff's claim for benefits be DENIED.

### Conclusion

For the above assigned reasons,

**IT IS RECOMMENDED** that Plaintiff, Esther Hill White's claim for benefits be DENIED and DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 24th day of March 2017.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

18